UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BARRAZA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-0430 JAM DAD<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the undersigned will recommend that plaintiff's motion be granted, that defendant's cross-motion be denied, that the decision of the Commissioner of Social Security ("Commissioner") be reversed, and the matter be remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On February 25, 2009, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on March 4, 2006. (Transcript ("Tr.") at 201-09.) Plaintiff's application was denied initially and upon

1

reconsideration. (Id. at 161-66, 171-76.) Thereafter, plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 7, 2010. (Id. at 77-123.) Plaintiff was represented by counsel and testified at the administrative hearing. In a decision issued on February 18, 2011, the ALJ found that plaintiff was not disabled. (Id. at 37.)

>The ALJ entered the following findings:
>
>1. The claimant meets the insured status requirements of the Social Security Act through September 30, 3012.
>
>2. The claimant has not engaged in substantial gainful activity since March 4, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
>3. The claimant has the following severe impairments: congenital hereditary glaucoma with high myopia; cataracts and bilateral scarring, status post surgery (20 CFR 404.1520(c)).
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no work involving climbing ladders, ropes or scaffolds, working at heights or around dangerous machinery, or that require (sic) depth perception or fine visual acuity.
>
>6. The claimant is capable of performing his past relevant work as a security managers and parking lot attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>7. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2006, through the date of this decision (20 CFR 404.1520(f)).

(Id. at 31-37.)

On July 26, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 4-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the

/////

/////

/////

2

complaint in this action on September 29, 2012.[1]

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

/////

---

[1] The matter was transferred to the Sacramento Division of this court on March 5, 2013, after it was discovered that the action had been improperly filed by plaintiff's counsel in the Fresno Division of the Eastern District of California. (Dkt. No. 13.)

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion for summary judgment plaintiff argues that the ALJ committed the following four principal errors in finding him not disabled:  (1) the ALJ erred with respect to her treatment of the medical opinion evidence; (2) the ALJ improperly rejected plaintiff's own testimony concerning his subjective symptoms; (3) the ALJ's hypothetical question posed to the Vocational Expert was incomplete; and (4) the ALJ erred in finding that plaintiff was capable of performing his past relevant work

**I.    Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in rejecting the opinion of Sylvia Hamilton, Ph.D. (Pl.'s MSJ (Dkt. No. 17) at 7-11.[2])  In this regard, on December 6, 2010, Psychologist Sylvia Hamilton examined plaintiff and provided a Psychological Evaluation based on her clinical

---

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

interview of plaintiff, a review of plaintiff's medical/psychiatric records and the administration of the Bender-Gestalt II Test and the Wechsler Adult Intelligence Scale-IV (WAIS-IV). (Tr. at 680.)

In assessing plaintiff's capabilities and limitations, it was Dr. Hamilton's opinion that plaintiff's "intellectual functioning is extremely low," and that he is "less capable of carrying out moderate to complex tasks requiring time limits." (Id. at 684.) According to Dr. Hamilton, plaintiff also "would have moderate to marked difficulty sustaining full-time work days and work weeks, given his state of depression, cognitive impairment and medical conditions." (Id.) Moreover, because he was "less capable of handling his finances" he would "require a payee." (Id.) Also, Dr. Hamilton concluded that plaintiff "would have difficulty" performing jobs that require "sustained concentration, mental alertness, task completion, and work efficiency." (Id.) According to Dr. Hamilton it was also "less likely" that plaintiff would be able to work in a setting "with moderate social interactions with peers and close supervision" because "he is more inclined to view co-workers and peers as an added stressor in the work setting." (Id.) Dr. Hamilton identified thirteen work-related abilities, such as following/remembering simple instructions, maintaining adequate pace or persistence, withstanding the stress of a routine work day, interacting appropriately with co-workers, supervisors and the public, etc. (Id.) Dr. Hamilton found plaintiff's ability to perform each of these tasks was limited to some degree, ranging from mild, mild to moderate, moderate, to moderate to marked. (Id.)

The ALJ, however, elected to give "greater weight" to the opinion of another examining physician, Dr. Canty, instead of Dr. Hamilton's opinion, stating:

> The undersigned gives greater weight to the opinion of Dr. Canty as it is more consistent with the claimant's own reported level of daily functioning. Moreover, the report from Dr. Hamilton is inherently biased as it was generated solely at the request of the claimant's attorney. Additionally, Dr. Hamilton's report fails to discuss the cause or background of the claimant's alleged anxiety and depression and her conclusions are inconsistent with his current caregiving activities.

(Id. at 35.)

/////

5

"[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ must do more than offer her conclusions. She must set forth her own interpretations and explain why they, rather than the doctor's, are correct. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

Here, the ALJ gave less weight to Dr. Hamilton's opinion because it was purportedly inconsistent with claimant's level of daily functioning and "with his current caregiving activities." (Tr. at 35.) The ALJ, however, did not explain how plaintiff's daily functioning and caregiving activities were inconsistent with the opinions rendered by Dr. Hamilton. Elsewhere in her opinion the ALJ noted that plaintiff "physically performs a significant degree of other daily activities, including household chores and shopping, in his role as a caretaker for his elderly mother." (Id. at 36.)

It is not clear, however, how plaintiff's ability to shop or perform household chores is inconsistent with Dr. Hamilton's finding that plaintiff was limited in his ability to follow/remember complex/detailed instructions, perform mathematical calculations, maintain adequate pace or persistence, withstand the stress of a routine work day, or any of the other limitations indicated by that opinion.

Nor is any such inconsistency apparent from a review of plaintiff's testimony at the administrative hearing concerning his daily activities. In this regard, plaintiff testified that his "current caregiving activities" consisted of reminding his 83-year old mother to take her medication when plaintiff takes his medication. Plaintiff also testified that

> [w]hen I go to the store, I use those little cars you drive around, and when I get me something, I'll get her something also to eat.

(Tr. at 83.) Plaintiff testified that he also dusts, does laundry and drives his mother to her appointments. (Id. at 83-84.) Plaintiff also noted, however, that he leaves his home only "three

times a week, tops" and he rarely leaves the house alone due to his panic attacks. (Id. at 105.)

The ALJ also gave less weight to Dr. Hamilton's opinion because, according to the ALJ, it was "inherently biased as it was generated solely at the request of claimant's attorney." (Id. at 35.) However, it was recognized long ago that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995).

The final reason offered by the ALJ for according less weight to Dr. Hamilton's opinion was that her report failed "to discuss the cause or background of the claimant's alleged anxiety and depression . . . ." (Tr. at 35.) It is unclear to the undersigned, however, why a doctor's findings, generated as the result of an examination and the administering of testing, should be afforded less weight because those findings fail to discuss the cause or background of a limiting condition, when the very purpose of such the examination is to determine plaintiff's level of functioning, not to treat his underlying condition.

In this regard, the question presented to the doctor upon examination is what can plaintiff do, not how did he become subject to any limitations that are found. Moreover, Dr. Canty's opinion, to which the ALJ afforded greater weight, diagnosed plaintiff as suffering from "Anxiety disorder NOS," but also failed to discuss the cause or background of plaintiff's anxiety. Indeed, a comparison of Dr. Canty's opinion, (id. at 356-59), and that of Dr. Hamilton reveals that Dr. Hamilton's opinion provided greater detail, and was based in part on the results of objective testing, in contrast to that of Dr. Canty upon which the ALJ elected to rely.[3]

Accordingly, for the reasons stated above, the undersigned finds that the ALJ erred in rejecting the opinion of Dr. Hamilton without a specific and legitimate reason for doing so and

---

[3] The undersigned also notes that Dr. Canty's opinion was rendered on June 4, 2009, while Dr. Hamilton's was rendered on December 6, 2010, making Dr. Hamilton's the more recent medical opinion. The Ninth Circuit has found that medical reports that are most recent are more highly probative than those which were rendered at some earlier time. See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative."); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative.")

recommends that plaintiff's motion for summary judgment be granted as to this claim.

## II. Plaintiff's Testimony

Plaintiff next argues that the ALJ improperly rejected plaintiff's own testimony regarding the severity of his subjective symptoms. (Pl.'s MSJ (Dkt. No. 17) at 11–13.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

/////

1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, with respect to plaintiff's credibility, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's own residual functional capacity determination. (Tr. at 36.)

With respect to plaintiff's mental symptoms, the ALJ stated that he discredited plaintiff's testimony because although plaintiff "was recently seen for an evaluation by a clinical social worker," he "never followed through with any further treatment" and had "not established any evidence of ongoing care or therapy." (Id.) The record reflects, however, that plaintiff had been receiving treatment for his panic attacks in the form of his prescription for Paxil, (id. at 381, 681), and had begun counseling sessions with a Licensed Clinical Social Worker. (Id. at 105.)

The other reason offered by the ALJ for rejecting plaintiff's testimony was that the ALJ found that the "mild cognitive impairment alleged by Dr. Hamilton" was inconsistent with plaintiff's activities of daily living and caring for his mother. (Tr. at 36.) In this regard, the ALJ noted that while plaintiff testified that he suffered from panic attacks and anxiety, "he also admitted that he is able to leave the house to perform errands, shopping and attending his appointments." (Id.)

As noted above, however, Dr. Hamilton's opinion is entirely consistent with, and supportive of, plaintiff's own testimony that his activities of daily living and care for his mother are quite limited. In this regard, it was plaintiff's testimony at the administrative hearing that he leaves his home "three times a week, tops," (id. at 105), rarely by himself and does very little in terms of caregiving for his mother. (Id. at 83-84.)

Moreover, it is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has

1  carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for
2  exercise, does not in any way detract from her credibility as to her overall disability."). In
3  general, the Commissioner does not consider "activities like taking care of yourself, household
4  tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial
5  gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e).

6  Accordingly, the undersigned finds that the ALJ's opinion does not offer specific, clear
7  and convincing reasons for rejecting plaintiff's testimony regarding his subjective symptoms and
8  their severity. Accordingly, the undersigned recommends that plaintiff be granted summary
9  judgment in his favor with respect to this claim as well.

### III.     Incomplete Hypothetical

Plaintiff also argues that the ALJ erred by posing an incomplete hypothetical question to the Vocational Expert ("VE") who testified at the administrative hearing. (Pl.'s MSJ (Dkt. No. 17) at 13.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted).

Here, because the ALJ failed to incorporate the opinion of Dr. Hamilton and discredited plaintiff's testimony concerning his subjective complaints, the ALJ's hypothetical question posed to the VE (that ultimately served as the basis for the ALJ's determination that plaintiff was not disabled) did not include any limitations in plaintiff's mental functioning. In this regard, although the ALJ purported to merely give less weight to Dr. Hamilton's opinion as opposed to rejecting that opinion in its entirety, the ALJ's hypothetical questions to the VE did not pose any mental

/////

limitations at all and instead assumed an individual who "could perform a full range of work." (Tr. at 119.)

In her medical opinion, however, Dr. Hamilton stated that plaintiff's level of impairment with respect to his ability to follow/remember simple instructions and maintain adequate attention/concentration was mild to moderate. (Tr. at 684.) Moreover, Dr. Hamilton reported that plaintiff was moderately limited in his ability to maintain pace or persistence, withstand stress of a routine work day, maintain emotional stability/predictability, and interact appropriately with co-workers, supervisors and the public on a regular basis. (Id. at 684-85.) Dr. Hamilton also found plaintiff to be moderately to markedly limited in his ability to maintain adequate attention/ concentration, perform mathematical calculations, follow/remember complex/detailed instructions and adapt to changes in job routine. (Id. at 684.) These findings were consistent with plaintiff's testimony in which he reported that his panic attacks limited his ability to leave his home and that when he does leave his home he is usually accompanied by a family member. (Id. at 105.)

Nonetheless, the hypothetical questions posed by the ALJ to the VE failed to include any reference to the mental impairments reflected in Dr. Hamilton's opinion or plaintiff's testimony. See Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) ("We have previously made it clear that, in meeting her burden of showing the claimant's ability to work, the Secretary may only rely upon the vocational expert's testimony if the questions posed by the ALJ include all of the claimant's functional limitations, both physical and mental."); see also Brink v. Commissioner Social Sec. Admin., 343 Fed. Appx. 211, 212-213 (9th Cir. 2009)[4] ("Although the ALJ accepted that Brink has moderate difficulty with concentration, persistence, or pace, he nevertheless concluded, contrary to the vocational expert's testimony, that Brink can perform certain light work. This conclusion was based on an incomplete hypothetical question, and is not supported by substantial evidence. The hypothetical question to the vocational expert should have included not

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

11

only the limitation to 'simple, repetitive work,' but also Brink's moderate limitations in concentration, persistence, or pace."); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) ("The ALJ's hypothetical assumed that Howard was able to do simple, routine, repetitive work. All versions of the hypothetical assumed this mental capacity, and no additional details were brought out on direct or cross examination.  We find that describing her as capable of doing simple work adequately accounts for the finding of borderline intellectual functioning.")

Accordingly, the undersigned finds that plaintiff is also entitled to summary judgment in his favor with respect to his claim that the ALJ's hypothetical question posed to the VE was incomplete.

## CONCLUSION[5]

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, this matter should be remanded so that the ALJ can properly consider Dr. Hamilton's opinion and plaintiff's own testimony, pose proper hypothetical questions to a VE, if necessary, determine plaintiff's residual functional capacity based on all the evidence and, if applicable, determine if plaintiff has the residual functional capacity to perform past relevant work or any work.  On remand, the ALJ should consider the opinion of Dr. Hamilton and provide specific and legitimate reasons supported by substantial evidence in the record if Dr. Hamilton's

---

[5] In light of the analysis and conclusions set forth above, the court need not address plaintiff's final claim that the ALJ erred in finding that plaintiff could perform his past relevant work. Moreover, the undersigned notes that the ALJ's finding that plaintiff could perform past relevant work was likely substantially influenced by the ALJ's erroneous treatment of Dr. Hamilton's opinion, plaintiff's testimony and the questions posed to the VE.

opinion is rejected.  The ALJ should also consider plaintiff's testimony regarding his subjective symptoms and their severity and, if the ALJ rejects plaintiff's testimony, provide clear and convincing reasons.  Finally, any hypothetical questions posed to a VE must account for all of plaintiff's limitations and restrictions.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 17) be granted;

2. Defendant's cross-motion for summary judgment (Dkt. No. 18) be denied;

3. The decision of the Commissioner of Social Security be reversed; and

4. This case be remanded for further proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 18, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\barraza0430.f&rs.docx